Patent Office 17-1722 Mr. Grossman, and you reserve five minutes of your time. Yes, Your Honor, thank you. Okay, you may begin. May it please the Court. The Patent Act gives applicants the right to go to the Appeal Board to obtain review of rejections. MPEP Section 1207.04 violates that right because it purports to authorize examiners to block appeals of their own rejections by refusing to allow an appeal to proceed to the Board. Supreme Court rejectors... Where in the statute does it prohibit the Board from doing exactly this, taking the case back and saying we're going to reopen examination because you've raised a good argument on appeal? Your Honor, if the question is could the Board obtain this similar result, I think that's something that is an open question. That's not the question. The question is can the Patent Office, after an appeal brief is filed against them, take the case back into examination? I mean, clearly they're doing it. Where in the statutory language does it say they can't do that? Yes, Your Honor. So we think there are three indicia in the statute that indicate that the PTO cannot do that. The first is in Section 134 as well as Section 6B where the statute uses the word appeal. We don't think an appeal means that the appellee can unilaterally cause the appeal to desist other than by mooting it, by conceding the points on appeal. But this happens all the time. There have been protests at the Court of Federal Claims where routinely after they're filed, the government agency will say, you know, that's a good point. We'll take it back and reconsider it. And they'll, you know, cancel the procurement or the like and reexamine everything. That moots the case. Why isn't this similar to that? They're saying we're going to take another look at that and that moots the appeal. Well, Your Honor, we believe that the PTO can, in fact, moot an appeal by simply allowing the claims. I don't think there's any disagreement between the parties on that. And that's the same as it would be in an appeal in court. But the question here is the specific statutory authority that gives an applicant the right to an appeal to the board. And I would note that Section 6B confers a duty on the appeal board to, on written appeal of an applicant, review adverse decisions of examiners. All of that says what they can do and what they have to do once it's carried through. But it doesn't prohibit the PTO from mooting the appeal by saying we're going to reexamine this. Reexamine, I know, is a term of art, and I'm not using it correctly. But they're going to reopen prosecution. Well, Your Honor, so the third – In answer to my question, there is no direct statutory language that prohibits this. Well, Your Honor – Your argument is by implication, because you have a right to appeal, because the Patent Office can file an answer, because the board has to decide it, that that prohibits the agency practice of reopening prosecution. Yes, Your Honor, because we think that's what it means for the applicant to have an appeal right vested in him upon a second rejection of a claim. But your appeal right hasn't been taken away. You still have it after the Patent Office finishes its examination. And either it may grant the patent claims, or if it denies them again, then you'll get your appeal then. I'm not sure that's right, Your Honor. And the reason is because part of the patent appeal right is that it takes – is that it vests at the time of the second rejection, not the third, not the fourth, not the fifth. So the statute is set up to balance the administrability of patentability by the Patent Office with the interests of the applicant in obtaining appellate review of what it is that the examiner is doing. Congress struck that balance, and what Congress said was you get two rejections, and at that point, you get to go to a neutral arbiter, the board, and get a ruling on those rejections. Now, we don't disagree that the patent – that the examiner can certainly ask to reopen and can suggest that to the applicant. And indeed, that was the practice prior to the promulgation of Section 1207.04. The PTO makes much of this idea that there was a predecessor to that provision in place for a number of years that allowed a reopening of prosecution. But there was a material difference between that earlier provision and the current one. The earlier provision allowed an applicant, by filing a supplemental brief addressing any new grounds of rejection, to insist that the appeal would, in fact, go to the board. That's the version – that's Section 1208.02 that was in place until August of 2005 when Section 1207.04 was promulgated. So the PTO – What vests this with jurisdiction over Mr. Hyatt's request for a rulemaking pursuant to Section 553e? What vests this court? Yes. It's this court's standard appellate jurisdiction over claims that are in a district court pursuant to 28 U.S.C. 1338a that involve a substantial question of patent law. That's what this court explained. In the blue brief, you argue that we have jurisdiction pursuant to 28 1295a.1. But Preminger, the Secretary of Veterans Affairs, our jurisdiction over denial of a request for rulemaking dependent upon a statute not at issue. And you cite that. That's not at issue here. There we said we hold that 38 U.S.C. 502 vests this with jurisdiction to review the Secretary's denial of a request for rulemaking pursuant to 553e. That's why I'm asking you what vests this with jurisdiction over Mr. Hyatt's request for rulemaking pursuant to 553e. Do you follow my question? I think so, Your Honor. But what this court has jurisdiction over is not directly Mr. Hyatt's petition for rulemaking. It's the district court's judgment in his APA challenge before that district court under Section 1338a. And this court has appellate jurisdiction over that decision. Was his APA challenge in district court under 1338a? Or was it under? I know I was going to go on. But was it under 1338a? Or was it under a different position? Your Honor, we cited both 1331 as well as 1338a as a jurisdictional basis in the district court. Right, that's what I was reaching for, 1331. I mean, that's the normal challenge to rulemaking decisions in district court, isn't it? It is. But this court recognized in its Helfgott and Karras decision that the proper way to challenge the denial by the PTO of a petition that involves a substantial question of patent law is to challenge it under the APA in district court under 1338a. And that's exactly what we did in this instance. The district court held that your claims were precluded by the Eastern District litigation. Did you argue in your blue brief that the district court's claim preclusion holding was erroneous? Your Honor, the district court discussed that in its decision. We don't think that was ultimately the basis of the judgment. I would direct the Court to pages 1 and page 5 of the appendix. The judgment was for lack of subject matter jurisdiction, and so that's what we were required to address in our blue brief. We agree with the PTO that the PTO can argue additional bases for affirmance as the PTO, in fact, has done. And obviously, we dispute the claim preclusion argument raised by the PTO. On the matter of subject matter jurisdiction, the district court felt that it lacked jurisdiction on account of this Court's exclusive jurisdiction under Section 141, as well as the Eastern District of Virginia's jurisdiction under Section 145. So it applied the track doctrine. The problem, however, is that, again, this Court's decision in Helfgott indicates that petitions and outcomes by the PTO are properly brought in district court. And indeed, this Court held further in its McCurry decision that this Court lacked under Section 141 jurisdiction to review decisions on petitions. And obviously, the jurisdictional basis for 145, a jurisdiction of the district court, is effectively the same. It's a decision of the Board on a patentability issue, which this does not involve.  Yes, Your Honor. Do you agree that it involved identical parties or privates? Yes, Your Honor. If so, then whether this case is barred by claim preclusion depends on whether it involved the same claim or cause of action as this case, correct? Well, yes to a point, Your Honor. And so I think that is one reason. And obviously, we argue that that is one reason why there is not claim preclusion. But the other is simply that the claims that we've brought in this case did not exist at that point because the PTO had not yet acted on Mr. Hyatt's petition for rulemaking. This case is a facial challenge. There was no facial challenge in that case, and I don't think there could have been, for the reason that that challenge arose at the time that PTO denied Mr. Hyatt's petition for rulemaking. That is the basis for the claims in this case. So just from a timing perspective, there's no res judicata effect over claims that didn't exist at the time of the earlier judgment. We cited precedent from this Court, Aspects Eyewear, as well as the Ninth Circuit, Trujillo, that state that proposition as black-letter law. Why aren't these claims time-barred? Sorry. No, go ahead. Your Honor, this is a facial challenge to the agency's authority to maintain a particular procedural regulation. Sure, but the rule, you challenge the rule you're challenging more than six years after it was issued. Yes, Your Honor. It seems to me, and I think you may have it right, but it seems to me a very odd proposition of law that you can evade statute of limitations by just saying revoke the law regulation, and then it starts the statutory limitations period anew. I mean, that's contrary to almost any other kind of statute of limitations law we apply, isn't it? Well, Your Honor, so the Ninth Circuit, as well as the D.C. Circuit, and I think every circuit to consider. We can talk about the D.C. Circuit, because I think they've evolved on this issue in the correct way. The Ninth Circuit may not, so we might be stuck with that. But the Ninth Circuit has this reopening rule, right? Yes, Your Honor. And what's the rationale for that? The rationale is that an agency should not be able to hold out indefinitely a regulation for which it lacks statutory authority. But you always have the opportunity to challenge it in the course of its application to you in the context of an actual case, right? A party may or may not. It depends on the statutory scheme, and it depends on the application and a number of other factors. I mean, you could have challenged its application here, right? I mean, I understand there are some procedural barriers, but when PTO reopened, there's some 80 claims, I guess, that you had appealed to the board. They said, we're going to reopen prosecution. You could have challenged, based upon that rule, you could have challenged that, right, and said that reopening is contrary to statute. Your Honor, we could have done that. And let me give you an example for the reason why a party need not do that. If you look at the Court's Patleks litigation, that case involved the PTO's procedural rules regarding reexamination. That was applied against a patent holder, Patleks, whose patents were put into reexamination proceedings. While those proceedings were ongoing, Patleks brought an APA challenge to the reexamination proceeding, a facial challenge. Did they bring it within the statute of limitations? Yes, Your Honor. Well, that's the question, then. I mean, of course they had a right to bring it within the statute of limitations. You don't have to go through an as-implied challenge if it's within the period for filing a facial challenge. But why, when the period for filing a facial challenge has expired, can you remanufacture a new statute of limitations for a facial challenge just by this bizarre reopening precedent? Your Honor, Patleks' case was, in fact, a facial challenge. And the district court, the PTO actually moved to dismiss it on the ground that it would have to be raised within the context of the application. But you're not answering my question. I don't care about whether they can do it within the statute of limitations. Once the statute of limitations has expired, isn't an agency allowed to think its regulation is okay, absent some challenge in an as-implied case? That's the point of statute of limitations. Your Honor, the short answer is that this is definitively resolved by Northwest Environmental Advocates in Wind River. I understand that. But I don't understand why that case law is really good case law anymore. And certainly, the D.C. Circuit is moving away from that case law, suggesting that just filing a challenge or filing a request and saying reopen and having the agency deny it isn't enough to restart the statute of limitations anymore. Well, Your Honor, if there's any daylight between Northwest Environmental Advocates in this case, I'm certainly not aware of it. We followed exactly the procedure that the Ninth Circuit calls for in that case, and that led to the posture of the case here. We gave the agency an opportunity to consider our arguments and to consider the validity of the underlying procedural rule. The agency opted not to undertake a rulemaking to revoke the rule. That gives us the right to challenge that determination in district court. And I would say, you know, consider Massachusetts v. EPA. You know, parties have a right to file petitions for rulemaking for agencies, and they have a right to challenge the basis upon which they file rulemaking petitions with agencies within the statute of limitations. Your Honor, Massachusetts v. EPA concerned the denial of the petition that challenged an EPA policy that I believe was in place for a number of years, probably outside the statute of limitations. The point is, is that this is a way that one gets an agency to reconsider its view of a statute and then to determine the extent of its legal authority. It still seems really odd to me. I suggest that if this ever goes to the Supreme Court, they are going to follow the new D.C. Circuit precedent and not this very generous Ninth Circuit precedent. You're out of time. Mr. DiWallach has the floor. I want to take you back to claim preclusion. What we hadn't reached yet is factor one, whether involved in the same claim or cause of action, because you conceded the other two to me. The Ninth Circuit evaluates four criteria to determine whether the first factor is satisfying, whether the two suits arise out of the same transactional nucleus of facts, whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, whether the two suits involve infringement of the same right, and whether substantially the same evidence is presented in the two actions. Do you argue any of those four criteria in your blue brief? Your Honor, I do not believe we do in our blue brief for the reason that I stated earlier, that simply it was not the basis for the judgment that we appealed. The judgment is very clear. There was judgment for lack of subject matter jurisdiction. We responded to that in our reply brief on the basis of the PTO arguing a different basis for affirmance of the judgment below. If there's no further questions, I'll reserve the balance of my time. Thank you. Thank you. Counselor Schill. Thank you. May it please the Court. There are a lot of arguments and issues in this case, and I'd like to focus on two of them, one procedural and one substantive. Your Honor, the district court found that it lacked jurisdiction under the track doctrine. I couldn't find any cases where we've applied that doctrine, and the only Ninth Circuit case I could find, Public Utility Commissioner of Oregon v. Bonneville, is sort of difficult to follow. This Court has applied the track doctrine. It's escaping me right now in which case. But what we said in our brief, and I continue to believe, is that it sort of doesn't matter in this case, because if the Court correctly applied the track doctrine, then this Court has original jurisdiction over the issues in this case, and if the Court incorrectly applied the track doctrine, then this Court has appellate jurisdiction over the issues in this case. So it's sort of awash regardless. Are you challenging the subject matter jurisdiction of the District of Nevada to hear Mr. Hyatt's rulemaking challenge? We did not challenge that in the district court, and we're not raising that as an issue here either. We're arguing that it is precluded by an earlier decision. It's untimely, and... Wait a minute. You're saying it's untimely under 2401, but you're saying the district court doesn't lack subject matter jurisdiction because of that? The time bar... Can I ask you this, and maybe this is a little unfair, but what is the government's position? This is a very complicated issue. What is the government's position? If you don't have it, don't give it to me. Position on whether 2401A is a subject matter jurisdiction bar like 2501. I don't have that position. I'm not sure. But you didn't raise a challenge that 2401A is jurisdictional in that sense. That's right. Although there seems to be precedent on both sides from different circuits on that. Right. We argued that it's time barred, but we didn't... But not jurisdictional. That's right. Although if it's jurisdictional, we would still look at that. Still look at the... Jurisdiction can be examined at any time. Right. Right. That's right. And on the substance of Mr. Hyatt's claims, no one is trying to keep Mr. Hyatt from having the merits of his applications reviewed by the board or in court. And in his particular case, the USPTO has been trying very hard to get the merits of his web of 400 applications resolved so that he can either have deserved patents or have an appeal heard here. How many people do you have assigned? 15? There may be more, but there are at least 15 right now. And that's their full-time job is examining Mr. Hyatt's applications. And the requirement, which had to reopen prosecution in some of those 400 applications to be applied consistently across the board, is what's allowing the PTO to move forward in examining his applications. So this is a very good example of why it is important and necessary that the USPTO have authority to reopen prosecution. Aside from that, let's look at the APA issues that have been raised and the director's petition with respect to rulemaking, whether the PTO promulgated its rules correctly or not. The way I understand it is that that petition was denied for those allegations. That part of the petition, which I call the director's petition, was denied by the PTO, correct? And it was also rejected or denied by the District Court of Nevada. That's right. So that part of the petition is before us now. Well, so certainly an interested member of the public can petition for rulemaking and have that reviewed by a court. The problem is that you cannot use that process as a way to either collaterally attack ongoing USPTO proceedings, which we believe Mr. Hyatt is doing here, or as a backdoor to get to the process of implementation of something that is time-barred. So if our decision on the APA claims has, let's say, an adverse effect on the claims that are still pending before the PTO, the withdrawn claims, then we would not have jurisdiction over that. Then that is determined now by the track doctrine. Well, I think it's determined more by cases like AMS v. Lee and the Pregis case, which say that you can't bring in a separate collateral attack in court against ongoing proceedings. You have to wait until the ongoing proceedings are finished. So the track doctrine would help you in this instance? I think that's right, yes. I mean, I think the track doctrine addresses a similar concept, which is that the court that has ultimate authority to hear an appeal should be hearing any sort of interim decisions about their later authority. And is that because the APA claims were brought in the context of the proceedings before the PTO? Let's say it hadn't done that. They had gone somewhere else and brought the APA claims in a district court or somewhere else and not within. So would the track doctrine apply or a concept like it apply in this instance by virtue of the fact that they married or they brought together, they packaged together the APA claims and the merit claims? Right, yes, I think so. One thing I would quibble with is that a party does have to bring their issue to the agency in the first place. So they can't just bring it to a court without having petitioned the agency. They have to bring in an APA complaint before the agency? That's right. They have to seek the, whatever relief they're seeking, they have to seek at the agency first. Can I, I want to sort through, I know you have, you've made these statute of limitations arguments. I'm going to sort through them a little bit because I think they're getting glossed over as one argument, but I think there's two, right? You alluded to it, that there's differing lines of case law. I think one of them really is not good for you and it's almost impossible to get around, but for procedural challenges to the way rulemaking was enacted, i.e. this should have gone through notice and comment and stuff like that, it seems to me that the precedent overwhelmingly says that those are time barred and aren't capable of reopening under this reopening rule that the Ninth Circuit has. That's exactly right. But do you see any way around the Ninth Circuit precedent on this kind of reopening procedure when the attack is an ultra-virus one that goes to whether the regulation is within the agency's authority at all? Because I've read all those Ninth Circuit cases and it seems to me that they suggest that if you have a petition for rulemaking and you tell the agency, revoke this rule because it's beyond its authority and the agency declines, that that restarts the statute of limitation. I think the Ninth Circuit law is certainly messy on that point. So the Northwest Advocates case, which I believe Your Honor is referencing, relies on Wind River, which comes out, it seems to me, the opposite way. So it relies for its authority on a case that is saying that these late attacks are not available. But the way they're applied in the Ninth Circuit, let's just assume Ninth Circuit law applies. There may even be a dispute about that, but let's assume Ninth Circuit law applies. It's not just that one case you're talking about. I mean there are other cases. This is the rule the Ninth Circuit applies and we're stuck with it, assuming it applies. How is there any way around those cases that say if you file a petition for rulemaking asking the agency to revoke a statute the petitioner thinks is invalid and it's denied that if you file within the statute of limitations it's timely, even if it's a number of years after the statute expired for a direct challenge to the regulation? I mean I think that's right. I think there's definitely daylight for an interested member of the public who has filed a petition for rulemaking to have the merits under the Ninth Circuit case law. I agree that it's not clear that the Ninth Circuit applies here. And certainly not clear that other circuits would do the same thing. But assuming that's correct then, don't we have authority to hear the merits of that one question of are the agencies reopening a prosecution procedure contrary to the statute? Well, I would still argue that this is a collateral attack on the ongoing proceedings. Let's assume it's not. But assuming it's not, then yes, the merits of a denial of a petition for rulemaking are reviewable under an extremely deferential standard. It's the most deferential that I've seen under, for example, Massachusetts v. Indiana. Sure, although I mean that's a nice case law to kind of trot out, but ultimately if the question is whether it's ultra-virus or not, I'm not sure we're going to give you much deference. I think that's right. I think that's right. If it's ultra-virus, that is something that would be reviewable. Assuming that you disagree with me on it being a collateral attack on the agency's action. Well, it doesn't. I mean, certainly there are collateral aspects of it. And if he was arguing that we should revoke this and cancel the agency action reopening prosecution on the 80 claims, I think he'd be in trouble. I mean, he's already— And he has argued that, just to be clear. Yeah, well, I mean, we certainly— if his argument is that we, in the context of this case, could cancel that reopening, then I think he has collateral stoppable problems. And he has argued that in his—I believe it was in his complaint in the district court. Well, we'll see whether he continues to argue that or waives that when he gets back up. That makes sense. If the court has no further questions, I can move the remainder of my time. Thank you. Mr. Grossman, we'll restore your time to four minutes. Thanks, Your Honor. Just a couple of points. First, I would note that this is not a collateral attack. We fully concede that a decision in our favor in this case would not affect directly any ongoing proceeding before PTO and any of Mr. Hyatt's applications. The PTO, I will note, conceded as much that that was the gravamen of our petition. This is at page 48 and 62 of the appendix. Well, you're looking to vitiate an administrative process that would have— if so, that would have a beneficial effect. Your Honor, our view is that we—is that were we to prevail in this challenge, that we would then have the ability to subsequently raise that issue in the context of those applications, and the PTO could make whatever argument— you already rose them in the context of those applications. That is actually—well, Your Honor, if one looks—if you're referring to the unreasonable delay action, that was actually not an issue in the unreasonable delay action. I would encourage the Court to look at the record in that case. No, I guess I'm referring to your bundling of the APA issues with your argument as to whether the PTO can withdraw the rejected claims for reexamination. I'm not sure I understand, Your Honor. Okay. I will say this is not a collateral attack. The PTO recognized that with respect to our petition. We are not challenging—we're not seeking in the petition, and therefore not in this case, to seek or compel review of any particular action by any examiner. That's at page 48 of the appendix. Further to the idea that— And a very likely result is, even if we rule in your favor on the narrow statutory question, is if the PTO decides you've already raised and lost this issue as applied in that particular case, you might be collaterally a stop going forward in those cases. Your Honor, we might be, if that's the way that issue turns out. We obviously disagree, but I recognize— I'm just trying to figure out the process. I mean, if we rule in your favor, then you're going to go back to PTO and say, let these 80 cases—or these 80 claims go and let the appeal go through on them, right? And when they say no, what are you going to do? Are you going to file a mandamus petition here? Your Honor, I think that would be among the possibilities. But I will note, I think as Your Honor's question reflects, that that is something that would have to come up in the context of those future proceedings because what happens in those proceedings is not something that's at issue in these applications. Why didn't you file a mandamus petition in the first place? Well, I mean, what we did was to pursue the procedure that the Ninth Circuit suggests is the appropriate way to undertake a facial challenge. And the idea that this is an improper or disfavored way of undertaking some sort of collateral attack, I mean, that was really resolved in the Patlax case. It was the exact same procedural posture. There was a party before PTO that believed facially that the rules that were in force at that time were unlawful. That party brought it to court. PTO raised the exact same argument. That court rejected it. This court rejected it. Sure, but in that case, I mean, it was a timely challenge. It's well accepted when a statute issues and somebody can come out with new rules and regulations. People that are going to be affected by those rules are going to make facial challenges to them. This seems to me far different circumstance. This is not a new rule. It's been around for a while. You just didn't challenge it in time. And now you've manufactured a new challenge under that procedure. Your Honor, we followed the procedures that the Ninth Circuit and other courts have authorized for bringing these types of challenges. If I could briefly, I'd like to turn to the Supreme Court's decision in Steinmetz. It's our view that it adopts a definitive and binding interpretation of the statutory provisions at issue here. Steinmetz recognizes that applicants have a right to bring their appeals to the board and that the PTO has a corresponding what the court called a ministerial duty to allow appeals to proceed to the board. We think that that decision is completely binding as to the current version of the act. There's no distinction between the statutory provisions at issue as this court recognized or this court's predecessor recognized in Henschel. If no further questions, we ask that the court affirm. I'm sorry, reverse. Thank you, Your Honor. We thank the party for their arguments. This court is now in recess. All rise. The Honorable Court is adjourned until tomorrow morning. That's an applaud. Thank you, Your Honor.